## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SOLUTION TECHNOLOGY INTERNATIONAL, INC., | Case No. 08-_____ ( ) |
| Debtor. | |

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTIONS 105, 362, 364(c), AND 364(d) OF THE BANKRUPTCY CODE

Solution Technology International, Inc. ("**STI**" or "**Debtor**"), the debtor and debtor-in-possession in the above-captioned case, hereby moves for entry of interim and final orders (respectively, the "**Interim Order**" and "**Final Order**" and collectively, the "**DIP Financing Orders**") pursuant to sections 105, 362, and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "**Local Rules**"): (i) authorizing the Debtor to obtain postpetition secured financing of an aggregate principal amount up to $783,000 (the "**DIP Financing**"), (ii) granting certain senior liens and superpriority claims in connection therewith, and enter into certain transactions in accordance therewith; and (iii) scheduling a final hearing thereon. In support of this Motion, the Debtor submits the Affidavit of Dan L. Jonson in Support of First Day Motions and Applications (the "**Jonson Affidavit**") filed contemporaneously herewith and incorporated herein by reference. In further support of this Motion, the Debtor respectfully states as follows:

### Bankruptcy Rule 4001 Concise Statement

1.     This Motion seeks entry of interim and final orders authorizing the Debtor, to

obtain postpetition financing from Resurgence Partners LLC ("**Resurgence Partners**" or

"**Lender**") in accordance with a Postpetition Convertible Loan Agreement (the "**DIP Financing**

**Agreement**") up to the aggregate principal amount of $783,000 with priority over administrative

expenses and secured by liens on property of the estate pursuant to section 364(c) of the

Bankruptcy Code.  A true and accurate copy of the proposed DIP Financing Agreement is

attached hereto as **Exhibit A**.[1]

     2.     The material terms of the proposed DIP Financing are as follows:

     (a)     Borrower.  Solution Technology International, Inc.  *See* DIP Financing Agreement introduction and § 1.5.

     (b)     Lender.  Resurgence Partners, LLC.  *See* DIP Financing Agreement introduction and §1.22.

     (c)     Commitment.  $783,000.  *See* DIP Financing Agreement § 2.1

     (d)     Term. The Obligations shall either be (i) due and payable in the event that Borrower's plan of reorganization is confirmed by the Court, then automatically converted into 92.5% of the Borrower's issued and outstanding common stock or (ii) in the event that the Borrower's plan of reorganization is not confirmed by the Court, paid from the assets of the Borrower or the proceeds of the disposition thereof by the Borrower to Lender upon the earliest of the following (i) May 1, 2009 or (ii)  the date of acceleration of the Obligations upon the occurrence of an Event of Default  *See* DIP Financing Agreement §2.3.

     (e)     Purpose.  The Debtor will utilize the proceeds of the financing to fund the continuation of the operation of its business in accordance with the Budget in an effort to manage, preserve and maximize the value of the assets of the Debtor's bankruptcy estate.  See Interim Order § 5(iv).

     (f)     Priority and Liens.  The prepetition and postpetition liens and security interests of the Lender granted under the Secured Financing Agreements, the DIP Financing Agreement and the Interim DIP Order in the Lender's collateral are first and senior in priority to all other interests and liens of every kind, nature and

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Financing Agreement.

description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Sections 363, 364 or any other Section of the Bankruptcy Code or other applicable law. *See* DIP Financing Agreement § 4.1; Interim Order § II(2).

(g)    <u>Use of Cash Collateral</u>. Resurgence Partners consents to the use of its cash collateral under the Interim DIP Order with the adequate protection set forth in Section 5(vii) of the Interim DIP Order.

(h)    <u>Adequate Protection.</u>  To the extent the Lender's liens on and security interests in the their collateral or any other form of adequate protection of the Lender's interests is insufficient to pay in full all obligations, the Lender shall also have the priority in payment afforded by Section 507(b) to the extent of any such deficiency. *See* Interim Order § II(8).

(i)    <u>Carve-Out</u>. The DIP Financing Agreement creates a carve out in the amount of $150,000 for payment of statutory fees to the U.S. Trustee, fees payable to the Clerk of the Court, and the allowed fees and expenses of attorneys, accountants and other professionals retained by the Debtor and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (the "Professional Fee Carve Out"). The Professional Fee Carve Out expressly excludes any fees and/or expenses incurred by any professional in connection with, among other things, the assertion (but excluding any investigation into) of any claim challenging the legality, validity, priority, perfection, or enforceability of the Lender's liens on and security interests in the Debtor's assets. *See* Interim DIP Order §§ II(5)-(7).

(j)    <u>Interest</u>. The Debtor's obligations under the DIP Financing Agreement shall bear interest at the per annum rate of 8%. *See* DIP Financing Agreement § 1.19.

(k)    <u>Events of Default</u>. Under the Interim DIP Order the Events of Default are those Events of Defaults pursuant to the underlying loan documents among the parties, any breach of the Debtor's obligations under the Interim DIP Order, and specific Events of Defaults added by the DIP Financing Agreement as follows:

   i.    The Borrower fails to pay the Loans on the Maturity Date (whether by acceleration or otherwise) or any other Obligation when due;

   ii.    The Borrower breaches, defaults, or fails or neglects to perform, keep or observe any covenant or provision of the DIP Financing Agreement, the Note, or any other Post-Petition Loan Document,

3

and the same shall remain unremedied or unwaived for a period ending on the first to occur of (i) three (3) Business Days after the Borrower receives written notice from the Lender or (ii) ten (10) days after the Borrower first becomes aware thereof;

iii.    The Borrower's expenses for any particular Budget Month exceed the amount set forth in the Budget by more than the Permitted Variance for the relevant week;

iv.    Any representation, warranty, certification or statement made by the Borrower in the DIP Financing Agreement, any Post-Petition Loan Document, or any document to which the Borrower and the Lender are parties or by the Borrower in any certificate, financial statement or other document delivered pursuant hereto or thereto proves to have been incorrect in any material respect when made;

v.    The DIP Financing Agreement shall cease to be effective to grant a perfected security interest in the Post-Petition Collateral with the priority stated to be created thereby or such security interest shall cease to be in full force and effect or shall be declared null or void, or the validity or enforceability of such security interest or this Agreement shall be contested by the Borrower;

vi.    The Borrower, by motion, adversary action or other means, challenges or disputes in any manner, the nature, extent or validity of the Borrower's Lien on the Post-Petition Collateral;

vii.    If the Borrower breaches or violates any term of the Final Order;

viii.    Dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

ix.    Appointment of a Chapter 11 trustee in the Chapter 11 Case;

x.    The Borrower fails to file the Reorganization Plan (as defined in the Term Sheet) and accompanying disclosure statement on or before December 31, 2008;

xi.    The Bankruptcy Court does not enter an order confirming the Reorganization Plan on or before May 1, 2009.

*See* DIP Financing Agreement § 10.1; Interim Order § III(1). *The Debtor anticipates that some of the Events of Default enumerated under the underlying prepetition loan agreements will be eliminated or waived as Events of Default in the final version of the proposed Interim DIP Order that will be presented to the Court.*

DEL 86237538v1 November 3, 2008

(l)    Waiver of Applicable Nonbankruptcy Law Relating to Perfection on Property of the Estate or on the Foreclosure or Other Enforcement of Liens. The Interim DIP Order is deemed to be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted therein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the subject collateral, or other act to validate or perfect such security interest or lien. *See* Interim Order § II(3).

(m)    Relief From Automatic Stay. The automatic stay provisions of Section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to permit the Lender to perform any act authorized or permitted under the Interim DIP Order and the DIP Financing Agreement, including, without limitation, (a) to implement the postpetition financing, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Lender's collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the DIP Financing Agreement including all interests, fees, costs and expenses permitted under the DIP Financing Agreement, and apply such payments to the Debtor's obligations under the DIP Financing Agreement and the Interim DIP Order. Additionally, upon the occurrence of an Event of Default and after providing five (5) business days prior written to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee, the Lender shall be entitled to take any action and exercise all rights and remedies provided to them by the Interim DIP Order, the DIP Financing Agreement and/or applicable law as such parties may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the Lender's collateral. *See* Interim Order § III(3).

(n)    Waiver of Section 506(c) Surcharge. No costs or expenses of administration which have or may be incurred in the Bankruptcy Case at any time during the period commencing on the date of the Interim DIP Order through and including the date of the final hearing on the Motion (the "Interim Financing Period") or any time after the expiration of the Interim Financing Period shall be charged against the Lender, its respective claims, or its respective collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of such Lender. *See* Interim DIP Order § III(5).

20.     The Debtor believes the following provisions of the Interim DIP Order and/or DIP

Financing Agreement must be highlighted pursuant to Local Rule 4001-2.

> a.     <u>Provisions that Bind the Estate or Other Parties with Respect to the
> Validity, Perfection or Amount of a Secured Party's Prepetition Lien</u>.     The
> Interim DIP Order provides as follows with respect to objections to the Lender's
> prepetition liens:
>
> **<u>Objections to Prepetition Obligations</u>.  Notwithstanding
> anything to the contrary contained herein, any action, claim or
> defense (hereinafter, an "Objection") that seeks to object to,
> challenge, contest, or otherwise invalidate or reduce, whether
> by setoff, recoupment, counterclaim, deduction, disgorgement
> or claim of any kind: (a) the existence, validity or amount of
> the Prepetition Obligations, (b) the extent, legality, validity,
> perfection or enforceability of Lender's prepetition liens and
> security interests in the Prepetition Collateral, (c) Lender's
> right to apply proceeds of Postpetition Collateral against
> Prepetition Obligations in satisfaction of Lender's prepetition
> liens as provided for in this Interim Order shall be filed with
> the Court by any Committee or any other party in interest
> (including a Chapter 11 or 7 trustee) with requisite standing,
> within seventy-five (75) calendar days from the date of entry of
> this Interim Order (the "Objection Period").  If any such
> Objection is timely filed and successfully pursued, nothing in
> this Interim Order shall prevent the Court from granting
> appropriate relief with respect to the Prepetition Obligations,
> Lender's liens on the Prepetition Collateral.  If no Objection is
> timely filed, or if an Objection is timely filed but denied, (a) the
> Prepetition Obligations shall be deemed allowed in full, shall
> not be subject to any setoff, recoupment, counterclaim,
> deduction or claim of any kind, and shall not be subject to any
> further objection or challenge by any party at any time, (b)
> Lender's prepetition liens on and security interest in the
> Prepetition Collateral shall be deemed legal, valid, perfected,
> enforceable, and non-avoidable for all purposes and of first
> and senior priority, (c) Lender and each of its respective
> participants, agents, officers, directors, employees, attorneys,
> professionals, successors, and assigns shall be deemed released
> and discharged from any and all claims and causes of action
> related to or arising out of the Prepetition Financing
> Agreements, and shall not be subject to any further objection
> or challenge by any party at any time.**

DEL 86237538v1 November 3, 2008

Interim DIP Order § III(4).  The protections provided to the Lender pursuant to § III(4) of the

Interim DIP Order, are similar to those protections that the Lender will require in a final Order

approving debtor-in-possession financing, as a condition to providing its consent to any such

financing.

      b.    <u>Provisions that Waive, without Notice, the Estate's Rights under 11 U.S.C. § 506(c)</u>.  The Interim DIP Order contains the following provision regarding § 506(c) claims:

**Section 506(c) Claims.  No costs or expenses of administration which have or may be incurred in the Case at any time shall be charged against Lender, its respective claims, or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by Lender.**

Interim DIP Order § III(5).

## Jurisdiction and Venue

3.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157.

4.      Venue of this proceeding and this Application is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief sought herein are sections 105, 362, and 364

of the Bankruptcy Code, Bankruptcy Rule 4001(c), and Local Rule 4001-2.

## Background

6.      On the date hereof (the "**Petition Date**"), the Debtor commenced this case by

filing a voluntary petition for relief under Chapter 11 the Bankruptcy Code.

7.      The Debtor has continued in the possession of its property and is operating and

managing its business as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108

of the Bankruptcy Code.

DEL 86237538v1 November 3, 2008

8.      No request for a trustee or examiner has been made and a creditor's committee has not been appointed in this case.

9.      On the Petition Date, the Debtor also filed motions or applications seeking certain typical "first day" orders.  The factual background regarding the Debtor, including its current and historical business operations and the events precipitating this Chapter 11 filing, is set forth in detail in the Jonson Affidavit.

10.     Prior to the Petition Date, STI entered into a series of debt and equity financing agreements with YA Global Investments, L.P. (f/k/a Cornell Capital Partners, LP) ("**YA Global**") secured by a blanket lien against all of STI's assets (the "**Secured Financing Agreements**").  Those Secured Financing Agreements have now been assigned to Resurgence Partners (except that $150,000 of those obligations are still held by YA Global as a subordinated claim to the first priority secured lien held by Resurgence Partners).  The Secured Financing Agreements that YA Global assigned to Resurgence Partners are as follows:

A.      *Secured Convertible Debenture.* In April, 2006, STI entered into a secured convertible debenture in the amount of $1 million dated April 4, 2006 and due April 4, 2008 (the "**Secured Convertible Debenture**").  The Secured Convertible Debenture carries an interest rate of 8%.  STI has an option to redeem a portion or all amounts outstanding under the Secured Convertible Debenture upon three days advance written notice provided that the closing bid price of the STI's common stock is less than $.75.  This Secured Convertible Debenture has expired, but not default has been noticed or taken.

Under the terms of the Secured Convertible Debenture so long as any principal amount or interest is owed, STI cannot, without the prior consent of Resurgence Partners (i) issue or sell any common or preferred stock with or without consideration, (ii) issue or sell any preferred

8

stock, warrant, option, right, contract or other security or instrument granting the holder thereof

the right to acquire common stock with or without consideration, (iii) enter into any security

instrument granting the holder of security interest in any of STI's assets or (iv) file any

registration statement on Form S-8.  Under the terms of the Secured Convertible Debenture there

are a series of events of default, including failure to pay principal and interest when due, STI's

common stock ceasing to be quoted for trading or listing on the OTCBB and shall not again be

quoted or listed for trading within five trading days of such listing, or STI being in default of any

other debentures that have been assigned to Resurgence Partners.

B.     *Amended and Restated Convertible Compensation Debenture.* STI entered into an

amended and restated convertible compensation debenture in the amount of $400,000 due

April 4, 2008 (the **"Compensation Debenture"**).  The purpose of the Compensation Debenture

was to pay a fee in connection with the now terminated SEDA.  This Compensation Debenture

has similar redemption, conversion and remedies upon an event of default as the Secured

Convertible Debenture.

C.     *Second Amended and Restated Secured Convertible Debenture.* STI entered into a

second amended and restated convertible debenture in the principal amount of $642,041 dated

April 4, 2008 (the **"Second Amended Debenture"**).  Interest payments are to be paid monthly in

arrears commencing April 4, 2008 and continuing for the first day of each calendar month

thereafter that any amounts due under the convertible debenture are due and payable. The

interest includes a redemption premium of 20% in addition to interest set at an annual rate of 8%.

11.     The Secured Financing Agreements also include convertible debentures dated

April 4, 2006 and November 24, 2004 in the principal amounts of $256,757 and $625,000,

respectively.

12.     STI and Resurgence Partners have engaged in good faith and arms-length negotiations that culminated in an agreement by Resurgence Partners to provide the Debtor with up to $783,000 of secured postpetition financing, on the terms and subject to the conditions set forth in the DIP Financing Agreement.

13.     The Debtor is seeking the debtor-in-possession financing and use of cash collateral on an emergency basis in light of the immediate and irreparable harm that will be suffered by the Debtor's estate if the relief sought in this Motion is not granted.

14.     The Debtor has an urgent need to obtain the funds available under the DIP Financing Agreement and to use Cash Collateral in order to, among other things, (i) satisfy working capital and operational needs, (ii) continue to fund payroll, and (iii)  maintain its relationships with customers and certain vendors and suppliers.

15.     STI expects to emerge from the Chapter 11 case as quickly as possible following confirmation of its plan of reorganization.

## Basis for Relief Requested

16.     Approval of the DIP Financing will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including postpetition wages and salaries and other costs.  Unless these expenses are paid, the Debtor will be forced to immediately cease operations, which would likely (i) result in irreparable harm to its business, (ii) deplete going concern value, and (iii) jeopardize the Debtor's ability to maximize the value of its estate.  The credit provided under the DIP Financing will enable the Debtor to continue to satisfy vendors, service its customers, pay its employees, and operate its business in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all

10

stakeholders. The availability of credit under the DIP Financing will provide confidence to
the Debtor's creditors that will enable and encourage them to continue their relationships
with the Debtor. Accordingly, the timely approval of the relief requested herein is
imperative.

17.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a
debtor is unable to obtain unsecured credit allowable as an administrative expense under
section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit
or incur debt (a) with priority over any and all administrative expenses, as specified in
section 503(6) or 507(6) of the Bankruptcy Code, (b) secured by a lien on property of the
estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of
the estate that is subject to a lien. 11 U.S.C. § 364. The Debtor proposes to obtain the
financing set forth in the DIP Financing Agreement by providing, *inter alia,* superpriority
claims, security interests, and liens pursuant to section 364(c)(1), (2), (3) and section
364(d) of the Bankruptcy Code.

18.    The Debtor's liquidity needs can be satisfied only if the Debtor is immediately
authorized to borrow under the DIP Financing Agreement and to use such proceeds to fund its
operations. The Debtor has been unable to procure sufficient financing in the form of
unsecured credit allowable under section 503(b)(1), as an administrative expense under section
364(a) or (b), or in exchange for the grant of a superpriority administrative expense claim
pursuant to section 364(c)(1). The Debtor has not been able to obtain postpetition financing
or other financial accommodations from any alternative prospective lender or group of
lenders on more favorable terms and conditions than those for which approval is sought
herein. Moreover, potential sources of the proposed DIP Financing for the Debtor, obtainable

11

on an expedited basis and on reasonable terms, were extremely limited.

19.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See In re Ames Dept Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). *See also In re Funding Systems Asset Management Corp.,* 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Sirnasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985).

20.     Furthermore, section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien. *Bray v. Shenandoah Fed. Savings & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee was not required to seek credit from every possible lender and the information provided regarding unsuccessful contact with financial institutions in the geographic area was sufficient to establish that credit was not available without granting a senior lien); *In re 495 Central Park Ave. Corp.,* 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most banks lend money only in return for a senior secured position"); *In re Aqua Assocs.,* 123 B.R. 192, 197 (Bankr. L.D. Pa. 1991) (debtor adequately established that some degree of priming of loan was necessary if debtor were to obtain funding).

21.     The terms and conditions of the DIP Financing Agreement are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good

DEL 86237538v1 November 3, 2008

faith and at arms' length. Accordingly, Resurgence Partners and all obligations incurred under the DIP Financing Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

22.     As security for the DIP Financing, the Debtor proposes to grant to Resurgence Partners valid and perfected liens and security interests senior to any and all claims with respect to assets of the Debtor (the "**DIP Liens**").

23.     In addition to the DIP Liens, the Debtor requests that all of the DIP Obligations be granted an allowed administrative expense claim (the "**Administrative Expense Claim**") with priority under Section 364(c)(1) of the Bankruptcy Code and otherwise, over all administrative expense claims, unsecured claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof.

24.     The granting of the DIP Liens and the Administrative Expense Claim were an express condition to the DIP Financing. Without such protections, Resurgence Partners would not have been willing to make the DIP Loan. Accordingly, the DIP Liens and the Administrative Expense Claim are necessary and appropriate pursuant to section 364 of the Bankruptcy Code.

### The Proposed Adequate Protection Should be Authorized

25.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ... by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional

13

liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate

protection must be decided on a case-by-case basis. *See In re O'Connor,* 808 F.2d 1393, 1396-

97 (10th Cir. 1987); *In is Martin,* 761 F.2d 472, 474 (8th Cir. 1985); *Shaw Indus. v. First Nat'l*

*Bank (In re Shaw Indus., Inc.),* 300 B.R. 861, 865-66 (Banks. W.D. Pa. 2003) (*quoting In re*

*Sharon Steel Corp.,* 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993)). The focus of the requirement is

to protect a secured creditor from diminution in the value of its interest in the particular

collateral during the period of use. *See In re Swedeland Bev. Group, Inc.,* 16 F.3d 552, 564

(3d Cir. 1994) ("the whole purpose of adequate protection for a creditor is to insure that the

creditor receives the value for which he bargained prebankruptcy.") (citation omitted).

26.     Resurgence Partners has agreed to the Debtor's use of Cash Collateral, in

consideration of the adequate protection provided under the Interim DIP Order. Accordingly,

the adequate protection proposed herein to protect Resurgence Partners' interest in its

prepetition collateral is fair and reasonable and sufficient to satisfy the requirements of

sections 363(c)(2) and (e) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

27.     The relief requested herein contemplates a modification of the automatic stay (to

the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and

superpriority claims described above with respect to the Lender, as the case may be, and to

perform such acts as may be requested to assure the perfection and priority of such security

interests and liens; (ii) permit the Lender to exercise, upon the occurrence of and during the

continuance of an event of default (upon five (5) business days notice of such occurrence), all

rights and remedies under the DIP Financing Agreement; and (iii) implement the terms of the

interim and final DIP Financing Orders.

28.    Stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### Interim Approval Should Be Granted

29.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fifteen (15) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

30.    Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtor to use Cash Collateral and borrow under the DIP Financing Agreement on an interim basis, pending entry of a final order, in order to maintain and finance the ongoing operations of the Debtor, and avoid immediate and irreparable harm to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

31.    The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate its business on an ongoing basis.  Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be immediately and irreparably harmed.  The availability of interim loans under the DIP Financing Agreement will provide necessary assurance to the Debtor's vendors, employees, and customers of its ability to meet their near-term obligations.  Failure to meet these obligations and to provide

15

these assurances likely would have a long-term negative impact on the value of the Debtor's business, to the detriment of all parties in interest. Furthermore, the lack of an interim facility would result in accelerated cash demands on the Debtor. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor and facilitating its reorganization efforts.

32.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

33.     To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

34.     In these circumstances, the granting of relief requested by this Motion is warranted.

## Notice

35.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition secured creditors and postpetition secured lender; (iii) creditors holding the twenty (20) largest unsecured claims as set forth in the list filed with the Debtor's petition; and (iv) the Securities and Exchange Commission. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

16

**No Prior Request**

36.    No previous application for the relief sought herein has been made to this or any other court.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests this Court enter an order:

(a)    granting the relief requested herein; and

(b)    granting the Debtor such other and further relief as is just and proper.

Dated: November 4, 2008

                        GREENBERG TRAURIG, LLP

                        Donald J. Detweiler (DE Bar No. 3087)
                        Sandra G. M. Selzer (DE Bar No. 4283)
                        The Nemours Building
                        1007 North Orange Street, Suite 1200
                        Wilmington, Delaware  19801
                        Telephone:  (302) 661-7000
                        Facsimile:  (302) 661-7360
                        Email: detweilerd@gtlaw.com
                              selzers@gtlaw.com

                                   -and-

                        Robert W. Dremluk (to be admitted *pro hac vice*)
                        Seyfarth Shaw LLP
                        620 8th Avenue, 32nd Floor
                        New York, New York 10018
                        Telephone:  (212) 218-5500
                        Facsimile:  (212) 218-5526
                        Email: rdremluk@seyfarth.com

                        Heidsha Sheldon (to be admitted *pro hac vice*)
                        Two Seaport Lane, Suite 300
                        Boston, Massachusetts 02210
                        Telephone: (617) 946-4800
                        Facsimile (617) 946-4801
                        Email: hsheldon@seyfarth.com

                        *Proposed Counsel for Debtor and*
                        *Debtor-in-Possession*